**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:16-cv-25142-KMM

Wendy Miller,

      Plaintiff,

v.

The PNC Financial Services Group, Inc.,
The PNC Financial Services Group, Inc.
and Affiliates Long Term Disability Plan,
an ERISA Benefit Plan

      Defendants.

_____/

## ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE came before the Court upon Plaintiff's Motion for Summary Judgment ("Plaintiff's Motion") (ECF No. 27) and Defendants' Motion for Summary Judgment ("Defendants' Motion") (ECF No. 30). The motions are now ripe for review.[1] The Court, having considered the parties' submissions, the administrative record and relevant case law, and being fully advised in the premises, grants Plaintiff's Motion for Summary Judgment and denies Defendants' Motion for Summary Judgment.

---

[1] In response to Plaintiff's Motion, The PNC Financial Services Group, Inc., The PNC Financial Services Group, Inc. and Affiliates Long Term Disability Plan (collectively, "Defendants") filed a Response in Opposition ("Defs.' Opp.") (ECF No. 32) and Responses to Plaintiff's Statement of Undisputed Facts ("Defs.' Opp. 56.1") (ECF No. 33). Plaintiff filed a Reply in Support ("Pl.'s Reply") (ECF No. 46).

In support of their Motion, Defendants separately filed a Statement of Undisputed Facts ("Defs.' 56.1") (ECF No. 31). In response to Defendants' Motion, Plaintiff Wendy Miller filed a Response in Opposition ("Pl.'s Opp.") (ECF No. 34) and Responses to Defendants' Statement of Undisputed Facts ("Pl.'s Opp. 56.1"). Defendants filed a Reply in Support ("Defs.' Reply") (ECF No. 37).

# I.    BACKGROUND[2]

This action seeks reversal of Liberty Life Assurance Company's decision, as the Claims Administrator for an employee welfare benefit plan, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), § 502 (a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), to terminate the long-term disability ("LTD") benefits of Wendy Miller ("Plaintiff").

## A.    The Plaintiff and the Plan

Plaintiff worked as a Branch Manager II at The PNC Financial Services Group, Inc. ("PNC"). *See* Pl.'s 56.1 ¶¶ 1, 5; Defs.' 56.1 ¶ 1; *see also* Defs.' Opp. 56.1 ¶ 5. By virtue of her employment at PNC, Plaintiff participated in an employee welfare benefit plan known as The PNC Financial Services Group, Inc. and Affiliates Long Term Disability Plan (the "Plan"). Pl.'s 56.1 ¶¶ 1–2; Defs.' 56.1 ¶ 1–2. The Plan is governed the ERISA. Defs.' 56.1 ¶ 2. The terms of the Plan are written in a Summary Plan Description booklet ("SPD"), which serves as both the plan document and summary plan description for the Plan. Pl.'s 56.1 ¶ 2.

The Plan provides full-time, salaried employees, who are out of work for longer than ninety-one (91) days (the "Elimination Period") with LTD benefits of up to 60% of their base salary. Defs.' 56.1 ¶ 2. The Plan allows employees to purchase an additional 10% of LTD coverage for a total benefit of 70%. *Id.* Plaintiff participated in the Plan at the 70% level. *Id.*

---

[2] The Court has determined the facts, which are undisputed unless otherwise noted, based on the parties' submissions, including the administrative record. Under Local Rule 56, "[a]ll material facts set forth in the movant's statement" of material facts "will be deemed admitted unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." L.R. 56.1(b).

The SPD explains that the "claims administrator determines whether [a participant's] disability meets" the definition of an LTD. Pl.'s 56.1 ¶ 3; Defs.' 56.1 ¶ 6. The SPD also provides the following definition for an LTD:

> For disabilities that extend beyond 91 consecutive calendar days and are considered long term, the definition of disability is as follows:
> - For the first 24 months [from the date LTD benefits begin]: you are disabled if your disability makes you unable to perform the material or essential duties of your own occupation as it is normally performed in the national economy.
> - After you have been disabled for 24 months: you are disabled if your disability makes you unable to perform the material duties of any occupation for which you are or can become qualified to perform by education, training or experience.

Pl.'s 56.1 ¶ 3; Defs.' 56.1 ¶ 6. The SPD also provides that "[a]s a condition of receiving benefits under the Plan, any person may be required to submit whatever proof the Plan Administrator may require (either directly to the Plan Administrator or to any person delegated by it)." Defs.' 56.1 ¶ 7. The Plan is "fully self-funded" and the benefits are paid out of a trust, the funds of which "must be used at all times for the exclusive benefit of Participants or Beneficiaries" of the Plan. Defs.' 56.1 ¶ 3.[3]

The SPD lists PNC as the Plan Sponsor and Plan Administrator and lists Liberty Life Assurance Company ("Liberty") as the Claims Administrator. Defs.' 56.1 ¶ 4. As Plan Administrator, PNC was authorized to delegate its responsibility under the Plan. Defs.' 56.1 ¶ 5;

---

[3] Plaintiff does not contest this fact but notes that she is unable to verify this information because Defendants have exclusive control over the evidence that could verify these statements. Pl.'s Opp. 56.1 ¶ 3. Because the fact is uncontroverted, the Court deems it as true. *See* L.R. 56.1(b).

*see also* AR 2679–2681.[4] PNC and Liberty entered into an Administrative Services Only Agreement ("ASA"), in which Liberty was vested with some authority to construe and interpret the terms of the Plan and to evaluate and decide questions of eligibility and/or entitlement to LTD benefits under the Plan. *Id.*

The SPD contains a clause providing that decisions made by the Plan may only be overturned by a court if the decision is found to have been arbitrary and capricious. *Id.* The ASA similarly provides that Liberty is deemed to have properly exercised its authority, unless it has abused its authority by acting arbitrarily and capriciously. *Id.*

**B.      The Claim and the Review**

Plaintiff suffers from a degenerative disc disease causing chronic back pain that radiates into her hips and legs (known as radiculopathy). Pl.'s 56.1 ¶ 6. Since 2009, Plaintiff has undergone five surgical procedures in an attempt to alleviate her chronic pain and radiculopathy. Pl.'s 56.1 ¶¶ 7–12. In April 2015, Plaintiff underwent the last of these surgical procedures, in which she had a neurostimulator implanted. *Id.* ¶ 11. After this implant, Plaintiff was unable to return to work and filed a claim for LTD benefits. *Id.* ¶ 13.

By letter dated August 5, 2015, Liberty informed Plaintiff that it had determined that she was eligible to receive LTD benefits, but that her claim would be reviewed periodically and that "approval at this time does not guarantee payments through the maximum benefits duration." Defs.' 56.1 ¶ 9; Pl.'s 56.1 ¶ 14.

Months later, Liberty reviewed Plaintiff's continuing eligibility. Pl.'s 56.1 ¶ 16. In the course of its review, Liberty's vocational consultant, Patricia Thal, completed an occupational analysis, which determined that Plaintiff's occupation as Bank Manager could be completed both

---

[4] All references to the Administrative Record appear in this Order as "AR __."

at a sedentary and at a light level. Pl.'s 56.1 ¶ 16. Thal also found that there were employment opportunities in the national economy existing at both levels. Defs.' 56.1 ¶ 14.

While investigating Plaintiff's claim, Liberty also consulted with an independent physician Board Certified in Physical Medicine & Rehabilitation, Dr. Negin Gohari, who reviewed the medical evidence in Plaintiff's file. Defs.' 56.1 ¶ 10. Dr. Gohari found in his December 12, 2015 report ("Gohari's Initial Report") that Plaintiff's "[d]iagnosis of post-laminectomy syndrome, status post spinal cord stimulator is supported by the medical evidence in this file." *Id.* Dr. Gohari concluded that Plaintiff had full-time capacity to work at a sedentary level and found, *inter alia*, that Plaintiff "can sit up to a half-hour at one time up to three hours per 8 hour day." *Id.* ¶ 11; Pl.'s 56.1 ¶ 18.

Upon receipt of Dr. Gohari's report, Liberty's LTD Disability Case Manager sent an e-mail to Dr. Gohari, informing him that "[p]er vocational guidelines, sedentary would mean she is sitting most if not all of the day," and requesting a clarification from him because Dr. Gohari indicated that Plaintiff could work at a "sedentary level" but that Plaintiff "can sit up to a half-hour at one time up to three hours per 8 hour day." Defs.' 56.1 ¶ 11–12; Pl.'s 56.1 ¶ 19; AR 2351.

Dr. Gohari amended his report on January 5, 2016 ("Gohari's Amended Report") to set forth revised restrictions. Defs.' 56.1 ¶ 13. Dr. Gohari's Amended Report indicated that Plaintiff "can sit for two hours at a time for a total of 7 hours per 8-hour day." Defs.' 56.1 ¶ 13.

In the course of its review, Liberty also requested that Plaintiff's physical therapist, Brian Schuman, fill out a form indicating Plaintiff's restrictions. Pl.'s 56.1 ¶ 16. On November 5, 2015, Schuman filled out this form (the "Restrictions Form") and indicated that Plaintiff had a "class 5" impairment with severe limitations of functional capacity. Defs.' Opp. 56.1 ¶ 17. Schuman

also checked a box indicating that she is capable of performing "sedentary" work. Pl.'s 56.1 ¶ 17. This form contains instructions to "check one that indicates what your patient is capable of performing," and contains four other potential check-boxes—all of which entail greater forms of exertion than "sedentary." *See* AR 2397 (For example, "sedentary" involves "lifting/carrying up to 10 pounds occasionally," whereas "light" involves "lifting/carrying up to 20 pounds occasionally").

### C. The Termination and the Administrative Appeal

By letter dated January 12, 2016, Liberty terminated Plaintiff's benefits. Pl.'s 56.1 ¶ 21; Defs.' 56.1 ¶ 15. The letter stated, in part: "Based on the medical information in relation to your occupation requirements, the consulting physician's findings and the occupational analysis, you no longer meet your Plan's definition of disability, and we must close your claim. Benefits will be paid through January 12, 2016 and your claim will be closed." Defs.' 56.1 ¶ 17. In the letter, Liberty noted (a) the applicable definition of LTD, (b) medical documentation on file from Dr. Daniel Laich (Neurosurgery), Physical Therapist Brian Schuman, and Dr. Joel See (Physiatry and Pain Management), (c) Thal's occupational analysis, and (d) Gohari's Amended Report. Defs.' 56.1 ¶ 16; Pl.'s 56.1 ¶ 22. The letter made no mention of the restrictions set forth in Dr. Gohari's Initial Report. Pl.'s 56.1 ¶ 22. The termination letter also cited Schuman's Restrictions Form for the proposition that Schuman "note[d] [Plaintiff's] ability to perform at a sedentary level," but omitted any reference of Schuman's stated restrictions or limitations, or his opinion that she is severely functionally impaired. *Id.* ¶ 23.

By letter dated June 29, 2016, Plaintiff informed Liberty that she had recently retained counsel and requested an extension of 60 days to submit an appeal. Pl.'s 56.1 ¶ 24.[5] After conferring with PNC, Liberty denied the requested extension by letter dated July 7, 2016—the day before her appeal due date. Pl.'s 56.1 ¶¶ 25–27.

Plaintiff submitted an appeal on July 8, 2016 and requested that Liberty toll its review while Plaintiff gathered additional pertinent medical information. Pl.'s 56.1 ¶ 28. By letter dated August 9, 2016, Liberty stated it would proceed with its review based on the information on file, but that if additional information is received prior to its determination, such information will be considered in the evaluation of the claim. Pl.'s 56.1 ¶ 30; Defs.' Opp. 56.1 ¶ 30; AR 2049. By letter dated August 29, 2016, Liberty notified Plaintiff that she would have until September 8, 2016 to submit information supporting her appeal. Pl.'s 56.1 ¶ 32.

### 1. Plaintiff's Post-Termination Treatments[6] and Submissions

On January 12, 2016—the date of Liberty' termination letter—Plaintiff had an office visit with her treating physician, Dr. Joel See. Dr. See's notes from this visit indicated that Plaintiff "reports better back pain control and less radiating symptoms on the Nucynta, although she reports a new symptom of headaches" and that Plaintiff "tolerated the Cymbalta as well." Defs.' 56.1 ¶ 22. His plan for Plaintiff involved lowering the dose of Nucynta and trying to reduce the opioid medication she was taking, with further injections only if more severe or radiating symptoms would occur. *Id.*

---

[5] The Plan provides that "[i]f your claim for benefits under the Plan is denied, you or your representative may appeal the adverse benefit determination by submitting a request for review in writing to the claims administrator within 180 days after your receipt of the written or electronic notice of denial." Defs.' 56.1 ¶ 18.

[6] The following do not reflect an exhaustive list of Plaintiff's medical treatments, but merely the events noted by the Parties in their respective statements of undisputed facts.

On July 7, 2016, Plaintiff underwent a medical examination from her treating physician, Dr. Joel See. Defs.' 56.1 ¶ 20–21. Dr. See's office visit notes for that date indicate that Plaintiff "has some disability paperwork from her disability attorney that she would like filled out." *Id.* The notes further indicate that they "went over the disability paperwork together, it seems that she has very limited time with standing . . . [s]he also gets some sedation from some stronger pain medications and muscle relaxers." *Id.* ¶ 20. According to his note, Dr. See found "no new weakness or difficulty with fine tasks . . . no slurred speech . . . no in-coordination or shuffling gait." *Id.* ¶ 21. Dr. See's note also indicates that she will be dosed with oxycontin and Percocet and will "try some long acting oxycodone" and "continue with the Cymbalta." *See* AR 0090.

Between March 16, 2016 and September 16, 2016, Plaintiff submitted the following to Liberty: a letter from her trigger point specialist, Mary Biancalana, Defs.' 56.1 ¶ 28; a questionnaire completed by Brian Schuman ("Schuman's Physician's Questionnaire"), Pl.'s 56.1 ¶ 31; a set of additional medical records, *id.* ¶ 33; two reports completed by Dr. Stuart Rubin, *id.* ¶¶ 34, 36; and physical therapy records, *id.* ¶ 35.[7]

By letter dated March 16, 2016, Plaintiff's trigger point therapist, Mary Biancalana, stated that it was "not clear" that this therapy was helpful for Plaintiff "as her pain was constant and pervasive." AR 447. Biancalana "generalized" that Plaintiff "was completely impaired by

---

[7] In all, Plaintiff submitted: medical records from her orthopedic surgeon's practice, Swedish Covenant Medical Group [AR 53–76, 2063–2156]; medical records from her pain management specialist, Dr. Joel See [AR 77–117, 2451–2459]; physical therapy records from her physical therapist, Brian Schuman [AR 449–803]; medical records from her internist, Dr. Steven Cataldo [AR 378–413]; medical records from her general practitioner at Meridian Medical Associates [AR 118–377]; a prescription history report [AR 2270]; statements from two of her former co-workers regarding her performance over time [AR 2157–2161]; a questionnaire from her physical therapist, Brian Schuman [AR 2157–2161], and a peer review report and addendum completed by Dr. Stuart Rubin [AR 805–814]. *See* Pl.'s 56.1 ¶ 37.

her pain and her past surgical procedures." *Id.* Plaintiff received trigger point therapy in July and August of 2015. Defs.' 56.1 ¶ 28.

Plaintiff submitted Schuman's Physician's Questionnaire by letter dated August 24, 2016. Defs.' 56.1 ¶¶ 25–26; Pl.'s Opp. 56.1 ¶ 25. There is no record showing that Schuman treated or examined Plaintiff after December 28, 2015. Defs.' 56.1 ¶¶ 26, 29.[8] Records from Plaintiff's December 28, 2015 physical therapy session indicate that Plaintiff was "[s]tarting to notice improvement," had a pain level of 4 out of 10, and was "[p]rogressing fair towards initial goals" of limiting pain, increasing range of motion, and increasing strength. Defs.' 56.1 ¶ 27. Schuman's plan for Plaintiff was to "[f]ocus on limiting soft tissue and MFR [myofascial release], Progress HEP [home exercise program] to prepare for DC [discharge/discontinuance]." Id.

Plaintiff submitted Dr. Rubin's peer review reports on September 9, 2016 ("Rubin's Initial Report") and on September 16, 2016 ("Rubin's Addendum Report"). *See* Pl.'s 56.1 ¶¶ 34, 36. Rubin did not examine Plaintiff, but reviewed her medical records. Defs.' 56.1 ¶ 29.

### 2. Liberty's Appellate Analysis and Conclusions

Upon receiving the appeal, Liberty consulted with an independent physician, Board Certified in Physical Medicine and Rehabilitation, Dr. Howard Grattan, who prepared a report dated August 19, 2016. Defs.' 56.1 ¶ 23. Dr. Grattan did not physically examine Plaintiff but his report indicates he reviewed Plaintiff's medical records. *Id.*; Pl.'s Opp. 56.1 ¶ 23. Dr. Grattan's report also indicates that Dr. See explained to Dr. Grattan that Plaintiff "has been having pain

---

[8] Plaintiff testified that when Liberty terminated Plaintiff's LTD benefits, PNC also terminated health insurance, thus Plaintiff was unable to afford to continue seeing Schuman or Dr. Laich. *See* Pl.'s Opp. at 2 (citing Miller Aff. (ECF No. 34-1). Defendant has not contested this account, but contends that it is not relevant. *See* Defs.' Reply (ECF No. 37) at 10.

with prolonged sitting and standing" and that her "limitations in movement and positioning" are "related to" Plaintiff's "subjective reports of pain." Defs.' 56.1 ¶ 24. Dr. Grattan's report also indicates that Dr. Daniel Laich relayed that Plaintiff had not been seen by Dr. Laich since October 1, 2015. *Id.* Dr. Grattan concluded that "given [Miller's] significant surgical history she would be functionally impaired, but would have the ability to sustain gainful employment on a full time basis with restrictions and limitations." Defs.' 56.1 ¶ 23.

After the receipt of Rubin's Initial Report and Schuman's Physician's Questionnaire, Dr. Grattan prepared a supplemental report dated September 21, 2016, in which he concluded that his earlier assessment regarding Plaintiff's restrictions and limitations remained unchanged. Defs.' 56.1 ¶ 30.

Liberty also consulted with an independent physician Board Certified in Neurology, with a sub-specialty certificate in Pain Medicine, Dr. David Hoenig, who prepared a report dated October 10, 2016. Defs.' 56.1 ¶ 31. According to Dr. Hoenig's report, Dr. See informed Dr. Hoenig on October 4, 2016, that Plaintiff "had multiple spine surgeries" and "is unable to do her job as a banker which required her to sit and stand for long periods of time." *Id.* However, Dr. See also stated that Plaintiff's "pain control is stable" and that "[h]e does not know if she is able to work with restrictions and limitations" and "would need to do a functional capacity evaluation." *Id.*; AR 45.

Dr. Hoenig found that the need for restrictions and limitations were supported by Plaintiff's surgical history and treatment records. Defs.' 56.1 ¶ 32. The restrictions and limitations he found included the following functional abilities to "stand and walk for a combined total of up to six hours, up to 1 hour at a time, throughout an eight hour day," to "occasionally lift and carry 20 pounds and frequently up to 10 pounds," to "occasionally bend,

stoop, kneel, crouch, and crawl," and to "never climb or work around heights." *Id.* Dr. Hoenig also found that "[t]here are no other restrictions or limitations." *Id.* Dr. Hoenig further found that the "severity and scope of the claimant's reported pain is consistent with the severity and scope of the claimant's condition and intensity of treatment." AR 48. The report also noted that Plaintiff utilized "long-acting opioids," "spinal cord stimulation," and was seeing her physician on an "almost monthly basis." *Id.*

By letter dated October 25, 2016, Liberty denied Plaintiff's appeal. Pl.'s 56.1 ¶ 38; *see also* Defs.' 56.1 ¶ 33. The denial relied on the following documents: Dr. Howard L. Grattan's August 19, 2016 and September 21, 2016 reports, Pl.'s 56.1 ¶ 39; Dr. David B. Hoenig's October 10, 2016 peer review report, *id.* ¶ 40; and Patricia Thal's January 8, 2016 occupational analysis, *id.* ¶ 41. The letter indicated that Liberty "re-reviewed the information in the file in its entirety" and concluded that Plaintiff "no longer met the definition of disability and proof of her continued disability in accordance with the Plan provisions after January 12, 2016 ha[d] not been provided." Defs.' 56.1 ¶ 34.

## D.  This Action

Plaintiff originally filed this lawsuit on December 12, 2016. *See* Compl. (ECF No. 1). In the Amended Complaint, Plaintiff asserts that the Defendants wrongfully terminated her benefits under the Plan and seeks past LTD benefits, including prejudgment interest, retroactive to the day benefits were to have commenced through the maximum benefits period pursuant to 29 U.S.C. § 1132(a)(1)(B). *See* Am. Compl. (ECF No. 13) ¶ 20. Plaintiff also seeks attorneys' fees and costs. *Id.* ¶ 23.

## II.    LEGAL STANDARD

Although this matter is before the Court on cross-motions for summary judgment, in an ERISA benefits denial case "the district court sits more as an appellate tribunal than as a trial court." *See Curran v. Kemper Nat. Servs., Inc.*, No. 04-14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005) (quoting *Leahy v. Raytheon Co.*, 315 F.3d 11, 17–18 (1st Cir. 2002)). The Court "does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary." *Id.* Thus, there "may indeed be unresolved factual issues evident in the administrative record, but unless the administrator's decision was wrong, or arbitrary and capricious, these issues will not preclude summary judgment as they normally would." *Pinto v. Aetna Life Ins. Co.*, No. 09-01893, 2011 WL 536443, at *8 (M.D. Fla. Feb. 15, 2011).

Under 29 U.S.C. § 1132(a)(1)(B), a benefit plan participant or beneficiary may bring a civil action to recover benefits due under the terms of the plan, and to enforce or clarify rights under the terms of the plan. The provision does not set forth the appropriate standard of review for actions challenging benefit eligibility determinations. *See Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 (1989). Where a plaintiff challenges a denial of benefits under § 1132(a)(1)(B), a court must review the denial "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115.

The Eleventh Circuit has developed a multi-step framework for analyzing an administrator's benefits determination:

> (1) Apply the de novo standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

(2) If the administrator's decision in fact is "de novo wrong," then determine whether [the administrator] was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

(3) If the administrator's decision is "de novo wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

(4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

(5) If there is no conflict, then end the inquiry and affirm the decision.

(6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.[9]

*See Blankenship v. Metro. Life Ins. Co.*, 644 F.3d 1350, 1355 (11th Cir. 2011).

## III.  DISCUSSION

The Parties do not dispute that Plaintiff suffers from a degenerative disc disease causing chronic back pain, which has resulted in five spinal surgeries. Pl.'s 56.1 ¶¶ 6–12. Instead, the parties disagree about (1) whether Liberty's decision should be reviewed de novo or only for abuse of discretion and (2) whether Liberty's decision to terminate Plaintiff's LTD benefits was wrong and/or abused discretion. Pursuant to the Eleventh Circuit's framework as set forth in *Blankenship*, the Court will first consider whether Liberty's decision was de novo correct.

---

[9] In ERISA cases, the phrases "arbitrary and capricious" and "abuse of discretion" are used interchangeably. *See Jett v. Blue Cross & Blue Shield of Ala., Inc.*, 890 F.2d 1137, 1139 (11th Cir. 1989).

## A.  Liberty's Decision

At the first step, the administrator's decision is reviewed de novo to determine whether it was "wrong." The decision is wrong if the Court disagrees with the administrator's decision. *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1196 (11th Cir. 2010). Based on the evidence before the administrator at the time it made its decision, the court evaluates whether it would have reached the same decision. *Melech v. Life Ins. Co. of N. Am.*, 739 F.3d 663, 672–73 (11th Cir. 2014); *Blankenship*, 644 F.3d at 1354–55. "If the decision is correct, the court goes no further and grants judgment in favor of the administrator." *Melech*, 739 F.3d at 673.

Both Parties contend that they are entitled to judgment as a matter of law under the *de novo* standard.[10] Plaintiff argues that Liberty's decision is wrong for two reasons. First, Liberty relied on flawed evidence. Second, Plaintiff contends that she has met her burden under the plan by proving that she remains unable to complete the duties of her profession. Conversely, Defendants argue that Liberty's decision was de novo correct because (1) Liberty had sufficient evidence to conclude as it did; and (2) Plaintiff did not satisfy her burden of proof. The Court considers argument each in turn.

### 1.  Whether Liberty's Evidence Was Flawed

In its initial January 12, 2016 decision to terminate Plaintiff's benefits, Liberty considered the following pieces of evidence: Thal's occupational analysis, which determined that Plaintiff's occupation could be completed at a sedentary level or light level;[11] medical records from Dr. Laich, Brian Schuman, and Dr. See; Dr. Gohari's reports based on a review of

---

[10] Although Defendants argue that the abuse of discretion standard should apply, they also argue the decision was de novo correct in the alternative. *See* Defs.' Opp. at 10–16; Defs.' Motion at 13–18.

[11] AR 2342–2345.

Plaintiff's medical records;[12] and Schuman's Restrictions Form[13]. *See generally* AR 2283–2287 (Liberty's termination of benefits letter). Plaintiff objects to Liberty's use of Dr. Gohari's reports and Schuman's Restrictions Form.

Liberty's termination letter indicates that Liberty's Physical Medicine & Rehabilitation reviewer (Dr. Gohari) completed his review on January 5, 2016 and concluded that Plaintiff could "[s]it for up to two hours at a time for a total of seven hours per eight hour day." AR 2284. Although Gohari's Amended Report (dated January 5, 2016) did contain this conclusion, AR 2348–2349, the conclusion directly contradicts Gohari's Initial Report (completed December 12, 2015), which stated that that Plaintiff "can sit up to a half-hour at one time up to three hours per 8 hour day." *See* AR 2357–2358.

The circumstances surrounding this drastic change of opinion (quadrupling her continuous sitting time and more than doubling her cumulative sitting time) are suspicious. First, Gohari's Amended Report was completed after Liberty's LTD Disability Case Manager sent an e-mail to Dr. Gohari requiring an addendum to the report. *See* AR 2351. In this email, the Case Manager informed Dr. Gohari that "[p]er vocational guidelines, sedentary would mean she is sitting most if not all of the day" and requested a clarification because Dr. Gohari indicated that Plaintiff could work at a "sedentary level" in Gohari's Initial Report, but also specifically found that Plaintiff "can only sit for 3 hours a day." *Id.* Second, Plaintiff contends—and Defendant does not dispute—that Dr. Gohari revised his opinion as to Plaintiff's restrictions without receiving any new medical evidence. *See* Pl.'s Motion at 26.

---

[12] AR 2353–2358; AR 2348–2349.

[13] AR 2397.

Liberty's termination letter also notes that Plaintiff's physical therapist, Brian Schuman, "did note [Plaintiff's] ability to perform at a sedentary level." See AR 2284. While this is technically true, upon closer examination, it appears that this indication resulted from the misleading structure of a form that Liberty provided Schuman. In the course of its review, Liberty requested that Schuman fill out a restrictions form. Pl. 56.1 ¶ 17. The form—bearing Liberty Mutual Insurance letterhead—instructed Schuman to "check one" of five total boxes "that indicates what your patient is capable of performing occupationally on a full-time basis," and provided five potential checkboxes: "sedentary," "light," "medium," "heavy," and "very heavy." *See* AR 2397. Although Schuman checked "sedentary," the Court notes that each of the alternatives entailed greater forms of exertion than sedentary. *See id.* For example, "sedentary" involves "lifting/carrying up to 10 pounds occasionally," whereas "light" involves "lifting/carrying up to 20 pounds occasionally." *Id.*[14]

In light of these irregularities, the Court agrees with Plaintiff that Gohari's Amended Report and Schuman's Physician's Questionnaire—both of which Liberty relied on in its January 12, 2016 assessment—were flawed and thus carry little probative value.

However, the "decision" to be reviewed in this case is not Liberty's initial assessment, but Liberty's October 25, 2016 decision denying Plaintiff's administrative appeal and upholding Liberty's earlier termination of Plaintiff's benefits. *See Till v. Lincoln Nat'l Life Ins. Co.*, 678 F. App'x 805, 811 (11th Cir. 2017) ("This Court, in line with several other Circuit Courts of Appeal, will consider only the reasonableness of an administrator's final decision." (citing, *inter*

---

[14] The Court notes that Schuman also indicated on this form that Plaintiff had a "class 5" impairment with "severe limitation of functional capacity." AR 2398.

*alia*, *Khoury v. Group Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010) (reviewing administrative appeal))).

Liberty's October 25, 2016 appeal denial letter indicates that these questionable documents played a minor role in Liberty's administrative appellate determination. AR 27–33. Liberty indicated that it "re-reviewed the information in the file in its entirety," Defs.' 56.1 ¶ 34, and considered additional evidence, including Dr. Grattan's August 19, 2016 and September 21, 2016 reports and Dr. Hoenig's October 10, 2016 report. *See* AR27–33; *see also* Pl.'s 56.1 ¶¶ 39–41. Notably, Liberty's appeal denial letter cites to Dr. Grattan's opinion that Plaintiff could only sit for 90 minutes continually up to 6 hours per day, AR 30—which differs from both of Dr. Gohari's opinions (including the amended one that Plaintiff objects to). The appeal denial letter also makes no reference to Schuman's Restrictions Form or the "sedentary" checkbox therein.

The Parties agree that Liberty relied on the opinions of Dr. Grattan and Dr. Hoenig in denying Plaintiff's appeal. *See* Pl.'s Motion at 27; Defs.' Opp. at 18. Plaintiff argues that Dr. Grattan's and Dr. Hoenig's reports are flawed for two reasons. First, Plaintiff argues that neither doctor considered all of the evidence in her file—in particular, the peer review reports Plaintiff submitted from Dr. Stuart Rubin and Schuman's Physicians Questionnaire. Second, both doctors "downplayed the significance" of Ms. Miller's medication. *See* Pl.'s Motion at 27–30.

Dr. Grattan prepared a report dated August 19, 2016 based upon a review of Plaintiff's medical records. AR 2032–2038. Grattan concluded that "given [Plaintiff's] significant surgical history she would be functionally impaired, but would have the ability to sustain gainful employment on a full time basis with restrictions and limitations." AR 2037.

As previously noted, Plaintiff submitted Schuman's Physician's Questionnaire by letter dated August 24, 2016. Defs.' 56.1 ¶¶ 25–26; AR 2017–2021. Plaintiff also submitted a peer

review report and an addendum report completed by Dr. Stuart Rubin on September 9, 2016 and on September 16, 2016, respectively. *See* Pl.'s 56.1 ¶¶ 34, 36. After the receipt of Schuman's Physician's Questionnaire and Dr. Rubin's reports, Dr. Grattan prepared a supplemental report concluding that his earlier assessment as to the appropriate restrictions and limitations remained unchanged. *See* AR 815–821. Dr. Grattan's report reveals that he reviewed Schuman's Physician's Questionnaire because he summarizes the findings therein. *See* AR 819. By contrast, while Dr. Grattan lists Dr. Rubin's reports in the last two bullet points of the materials he reviewed, AR 0816, his report contains zero analysis of those reports. *See* AR 815–821. Notably, Dr. Grattan does not explain how he derived the 90-minute restriction for continuous sitting for a total of 6 hours in an 8-hour day, AR 820, or why he disagreed with Dr. Rubin's assessments— which were one-third the length (30-minute limit for continuous sitting and a total of two hours of sitting in an 8-hour day, AR 811).

Dr. Hoenig's October 10, 2016 report similarly does not address Dr. Rubin's reports. In fact, it does not even reference those reports or Schuman's Physician's Questionnaire. *See* AR 44–50. Moreover Dr. Hoenig reaches several conclusions directly contradicting the findings in those documents, without explicitly addressing the contrary evidence. For example, Dr. Hoenig stated "there are no side effects attributed to the claimant's medications." AR 49. However, Schuman specifically noted on his questionnaire that Ms. Miller experiences the following side-effects from her medication: "fatigue, dizziness, muscle weakness, and difficulty sleeping." AR 2018.

In short, Dr. Grattan and Dr. Hoenig ignored Plaintiff's evidence contrary to their conclusions and showed no sign of substantively addressing such evidence. This is problematic because Liberty's appellate denial letter relies so centrally on those reports such that, as Plaintiff

points out, the letter is largely "copied and pasted" from those reports. *See* Pl.'s Motion at 27. While neither Liberty nor its consultants need to agree with Plaintiff's doctors' medical opinions, Liberty cannot just ignore inconvenient evidence. *See Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 118 (2008) (finding MetLife had emphasized a certain medical report that favored a denial of benefits and had deemphasized certain other reports that suggested a contrary conclusion); 29 C.F.R. §§ 2560.503-1(h)(2)(iv) (requiring that the Plan "provide for a review that takes into account all comments, documents, records, and other information submitted by the claimant relating to the claim . . ."). Accordingly, based on the evidence before the administrator at the time it made its decision, the Court would not have relied on Dr. Grattan's and Dr. Hoenig's reports as Liberty did to evaluate Plaintiff's evidence for her claim.

### 2. Whether Plaintiff Satisfied her Burden of Proving Disability

In defending Liberty's decision, Defendants argue that the decision to deny LTD benefits beyond January 12, 2016 was de novo correct because Plaintiff "failed to carry her burden of proof in establishing that she was "unable to perform the material or essential duties of [her] own occupation" at the sedentary level of functioning. Defs.' Motion at 14. Relatedly, Defendants argue that it is "implicit in the requirement of proof that the evidence is objective" because the plan "puts the burden on the claimant" to provide proof of disability. Defs.' Motion at 21.

At the outset, the Court rejects Defendants' argument that Plaintiff's LTD claim was properly denied for failing to provide "objective" evidence. First, it is undisputed that the plan does not explicitly require objective evidence. *See id.* (Defendants merely argue that there is an "implicit" requirement). When a plan does not require objective evidence, the Court will not read in such a requirement. *See Creel v. Wachovia Corp.*, No. 08-10961, 2009 WL 179584, at *7 (11th Cir. Jan. 27, 2009) ("When the plan has no [objective evidence] requirement, however, we

evaluate the reasonableness of the decision in light of the sufficiency of the claimant's subjective evidence and the administrator's actions."). Second, Liberty's own consultant, Dr. Hoenig, concluded that the "severity and scope of the claimant's reported pain is consistent with the severity and scope of the claimant's condition and intensity of treatment." AR 48. In other words, Dr. Hoenig concluded that there is no reason to doubt that Plaintiff's subjective reports of pain were the product of fabrication or exaggeration. *See Nevitt v. Standard Ins. Co.*, 2009 WL 4730316, * 7 (N.D. Ga. 2009) (finding that decision to terminate disability benefits was unreasonable where claimant consistently complained of migraines, treating physicians' reports noted consistency with cervical injury, there was no substantial evidence of malingering, and the plan did not require objective evidence).

Because Plaintiff's benefits were terminated within the first 24 months from the date her LTD benefits began, AR 2283–2287, the relevant definition of disability in the SPD is as follows: "you are disabled if your disability makes you unable to perform the material or essential duties of your own occupation as it is normally performed in the national economy." AR 2668. The sole evidence in the record regarding the material or essential duties of Plaintiff's occupation is Thal's occupational analysis, which concluded that the typical physical demands of Plaintiff's occupation are "most often performed at a sedentary and light physical demand levels, with sufficient opportunities at both levels." AR 2344; *see generally* AR 2342–2345.

Plaintiff submitted large quantities of evidence relating to this qualification—both subjective and objective—casting doubt over the possibility that Plaintiff could perform at either level. Plaintiff submitted the following to Liberty: medical records from her orthopedic surgeon's practice, Swedish Covenant Medical Group [AR 53–76, 2063–2156]; medical records from her pain management specialist, Dr. Joel See [AR 77–117, 2451–2459]; physical therapy

records from her physical therapist, Brian Schuman [AR 449–803]; medical records from her internist, Dr. Steven Cataldo [AR 378–413]; medical records from her general practitioner at Meridian Medical Associates [AR 118–377]; a prescription history report [AR 2270]; statements from two of her former co-workers regarding her performance over time [AR 2157–2161]; a questionnaire from her physical therapist, Brian Schuman [AR 2157–2161], and a peer review report and addendum completed by Dr. Stuart Rubin [AR 805–814]. *See* Pl.'s 56.1 ¶ 37.

Moreover, there is ample evidence even in Liberty's own consultants' reports suggesting that Plaintiff is unable to function at even the sedentary level, because *inter alia*, she has difficulty sitting. *See, e.g.*, AR 2357 (Dr. Gohari's December 12, 2015 Report found that Plaintiff "can sit up to a half-hour at one time up to three hours per 8 hour day."); AR 824 (Dr. See informed Dr. Grattan that Plaintiff "has been having pain with prolonged sitting and standing" and that Plaintiff's "limitations in movement and positioning" are "related to" her "subjective reports of pain."); AR 46 (Dr. See explained Dr. Hoenig that Plaintiff is "unable to do her job as a banker which required her to sit and stand for long periods of time."). Per the Dictionary of Occupational titles—referenced in Liberty's denial letter, AR 2285—this restriction would prohibit Plaintiff from working in even a sedentary occupation because that requires "frequent to constant" sitting.[15]

When "the claimant has put forward ample subjective evidence, we look at what efforts the administrator made to evaluate the veracity of her claim, particularly focusing on whether the administrator identified any objective evidence that would have proved the claim and on what

---

[15] See also AR 48, (Dr. Hoenig's Report relayed that "[t]he claimant is utilizing opioids, including long-acting opioids" along with "spinal cord stimulation as well."). See *Flanigan v. Liberty Life Assur. Co. of Boston*, 277 F. Supp.2d 840 (N.D. Ohio 2003) ("The fact that Plaintiff is on so many strong medications is objective evidence that she is indeed chronically disabled").

kinds of independent physician evaluations it conducted." *See Creel*, 2009 WL 179584 at *7. For the reasons set forth in Section III.A.1, *supra*, the Court finds that Liberty's reliance on the reports of Dr. Hoenig and Dr. Grattan fell short of the evaluation of Plaintiff's claims that the Court would have conducted in the shoes of the Claims Administrator. *See Dimaria v. First Unum Life Ins. Co.*, 2005 WL 743324, *4 (S.D.N.Y. 2005) (In conducting its de novo review, the Court "stands in the shoes of the original decisionmaker.").

Additionally, the Eleventh Circuit has held that an "administrator's decision to deny benefits would be unreasonable if it failed to identify what objective evidence the claimant could have or should have produced, even if the administrator submitted the file for peer review." *Id.* Here, Liberty failed to identify any specific objective evidence that would be required for a continuation of Plaintiff's benefits. Instead, in its denial letter, Liberty suggested Plaintiff submit office treatment notes, test results, prescription histories, treatment plans from physicians, and any other additional information she felt would support her claim. AR 2286. This is the type of evidence Plaintiff submitted, and at no time was she notified that more specific objective evidence was required.[16] In light of the foregoing, the Court would have reached a different decision than Liberty did in terminating Plaintiff's LTD benefits. Accordingly, Liberty's decision is "de novo" wrong. *Melech*, 739 F.3d at 672–73.

### B.    Liberty's Discretion

The Court must next address whether the Plan vested Liberty with discretion to determine eligibility in reviewing claims for LTD benefits. *See Capone*, 592 F.3d at 1195. If Liberty had

---

[16] Plaintiff contends—and Defendants do not contest—that Liberty has never informed Plaintiff that her claim was terminated due to lack of objective evidence until Defendants' Motion for Summary Judgment (ECF No. 30). *See* Pl.'s Opp. at 20. This post-hoc rationale was not identified in Liberty's termination letter, 2283–2287, or its appeal denial letter, AR 27–33.

discretionary authority, then the ultimate question would be whether reasonable grounds supported the decision to deny benefits; in other words, whether Liberty's decision was arbitrary and capricious. *Id.*; *see also Glenn*, 554 U.S. at 111 (Where plan grants "the administrator or fiduciary discretionary authority to determine eligibility for benefits . . . [t]rust principles make a deferential standard of review appropriate." (citations and internal quotation marks omitted)). If Liberty lacked the discretionary authority, however, then the Court reverses Liberty's decision. *Capone*, 592 F.3d at 1195.

Plaintiff argues that Defendants have the burden of proving that the arbitrary and capricious standard applies to Liberty's decision, and that Defendants have not met this burden because no plan document expressly grants discretion regarding claims to Liberty. *See* Pl.'s Motion at 8–14. Defendants reject Plaintiff's contention that they have the burden of establishing that abuse of discretion applies, and argue that even if Defendants had such a burden, it is met because Liberty was properly granted discretion to decide LTD claims. *See* Defs.' Opp. at 3–8.

While the Eleventh Circuit has conclusively established that an ERISA claimant bears the burden of "prov[ing] she is disabled and the administrator's decision was an abuse of discretion," *Howard v. Hartford Life & Acc. Ins. Co.*, 563 F. App'x 658, 663 (11th Cir. 2014), it appears the Eleventh Circuit has not yet determined whether the ERISA claimant or the ERISA administrator bears the burden of showing that abuse of discretion is the proper standard of review. Some courts—including courts in this Circuit—have concluded that the administrator bears the burden. *See, e.g.*, *Wilson v. Walgreen Income Prot. Plan for Pharmacists & Registered Nurses, Walgreen Co.*, 942 F. Supp. 2d 1213, 1250 (M.D. Fla. 2013) (finding "Defendants have not met their burden to establish that Sedgwick was effectively granted discretion under the plan to act as an administrator or fiduciary"). Additionally, the Second Circuit has reasoned that the plan

administrator "bears the burden of proving that the arbitrary and capricious standard of review applies, since the party claiming deferential review should prove the predicate that justifies it." *Kinstler v. First Reliance Standard Life Ins. Co.*, 181 F.3d 243, 249 (2d Cir. 1999) (citation and internal quotation marks omitted). However, it is unnecessary for this Court to decide the issue of who bears the burden here, because regardless of which party bears the burden, Liberty has not been granted sufficient discretion by the Plan.

In *Firestone Tire & Rubber Co. v. Bruch*, the Supreme Court held "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." 489 U.S. 101, 115 (1989). The terms that are required to provide discretionary authority to a plan administrator must be stated in "express language" that "is unambiguous in its design to grant discretion regarding entitlements to the fiduciary or administrator." *Kirwan v. Marriott Corp.*, 10 F.3d 784, 789 (11th Cir. 1994); *see also Moon v. American Home Assurance Co.*, 888 F.2d 86, 88–89 (11th Cir. 1989) (emphasizing that discretionary authority cannot be implied from the plan, but must be expressly given by the plan.). Accordingly, this Court is tasked with "examining the plan documents to determine whether they grant the administrator discretion . . . ." *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1232 (11th Cir. 2006).

"A 'plan document' refers to the written document which sets forth the requirements of every employee benefit plan under 29 U.S.C. § 1102(b), *i.e.*, provides a procedure for establishing and carrying out a funding policy, describes the procedures for the operation and administration of the plan, provides a procedure for amending the plan and for identifying the persons who have authority to amend the plan, and specifies the basis on which payments are

made to and from the plan." *See Schena v. Metro. Life Ret. Plan for U.S. Employees*, No. 205CV-249-FTM-29SPC, 2006 WL 3333550, at *3 (M.D. Fla. Nov. 16, 2006), *aff'd*, 244 F. App'x 281 (11th Cir. 2007) (citing *Cotton v. Massachusetts Mut. Life Ins. Co.*, 402 F.3d 1267, 1275 n.8 (11th Cir. 2005)).

The Parties agree that the Summary Plan Description ("SPD") governs the terms of the Plan because it serves as the Plan document. *See* Pl.'s Motion at 13; Defs.' Motion at 8. Additionally, the SPD explicitly states that "this booklet serves as the plan document and the summary plan description (SPD) required under ERISA." AR 2665.

Plaintiff correctly concedes that the Plan grants discretionary authority to PNC. *See* Pl.'s Motion at 11. In relevant part, the SPD vests the "Plan Administrator" with "the exclusive discretionary authority to determine eligibility for benefits under the Plan, to construe the terms of the Plan and to determine any question which may arise in connection with its operation or administration, except to the extent that the Plan Administrator has authorized the claims administrator to make such determinations." AR 2679. The SPD defines the "Plan Administrator" as the "Plan Sponsor," which is "The PNC Financial Services Group, Inc." AR 2683.

Plaintiff also correctly concedes that the Plan granted PNC the ability to delegate its discretion to Liberty. *See* Pl.'s Motion at 11. The SPD explains that the "Plan Administrator" "may allocate or delegate fiduciary responsibilities to other persons (including insurance companies and third party administrators)." AR 2681. The SPD also states that the "Plan Administrator has delegated certain administrative functions to the claims administrator," which is defined as "The Liberty Life Assurance Company." *Id.*

Plaintiff argues, however, that PNC failed to properly delegate its discretionary authority to Liberty—the entity that actually made the benefits determination at issue in this case. Pl.'s Motion at 11. Accordingly, Plaintiff concludes, Liberty's determination should not be accorded a deferential review by this Court under the abuse of discretion standard. *Id.* Defendants argue that Liberty was accorded discretion sufficient to trigger an abuse of discretion review for four reasons. For the reasons set forth below, however, each of Defendants' arguments fails.

First, Defendants point to a clause in the SPD, which provides that "[i]f a decision made by the Plan is challenged in court, the court's review . . . shall be limited to a determination of whether the decision was arbitrary and capricious." Defs.' Reply at 2; AR 2679. Plaintiff argues that this is a legal conclusion, which does not bind the Court. *See* Pl.'s Motion at 12. Defendant counters that this is permissible, and points to dicta in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). *See* Defs.' Reply at 3. In that case, the Supreme Court stated that "[n]either general principles of trust law nor a concern for impartial decisionmaking . . . forecloses parties from agreeing upon a narrower standard of review." *Id.* at 115.

On first blush, that dicta appears to conflict with the Court's holding—just three sentences later—that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard *unless* the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* (emphasis added). However, the statements can be reconciled as follows: the parties are free to agree to an abuse of discretion review, and the way to attain that deferential review is through the plan providing "the administrator or fiduciary discretionary authority to determine eligibility

for benefits or to construe the terms of the plan." *Id.* A review of caselaw discussing this dicta reveals that Courts have nearly unanimously interpreted it in a similar way.[17]

Defendant has not proffered any cases—and the Court is aware of none—that construe this dictum to permit an ERISA plan to merely stipulate to an abuse of discretion review without also conferring discretionary authority to an administrator or fiduciary. Moreover, "when discretion is not clearly granted to the administrator, de novo review is appropriate because, in that case, deferential review 'would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted.'" *Foster v. Sedgwick Claims Mgmt. Servs., Inc.*, 842 F.3d 721, 734 (D.C. Cir. 2016) (citing *Firestone*, 489 U.S. at 113–14; *see generally Brown v. Blue Cross & Blue Shield of Alabama, Inc.*, 898 F.2d 1556, 1563 (11th Cir. 1990) *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Boston*, 542 F.3d 1352 (11th Cir. 2008) (discussing the tension between the parties' ability to "agree[] upon a narrower standard of review" and an interpretation of ERISA that "would afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted."). Accordingly, the Court finds that this clause does not prompt the Court to review Liberty's decision for an abuse of discretion.

---

[17] *See, e.g., Foster v. Sedgwick Claims Mgmt. Servs., Inc.*, 842 F.3d 721, 734 (D.C. Cir. 2016) (affirming deferential standard of review because the parties have agreed to it by vesting trustee with "discretion to construe disputed terms of the plan and determine eligibility for benefits."); *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1214 (4th Cir. 1990) *overruled in part on other grounds by Quesinberry v. Life Insurance Co. of North America*, 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc) (finding that the parties have not agreed upon a narrower standard of review because the policy did not grant PALICO discretionary authority to find the facts necessary to make eligibility determinations); *Neurological Res., P.C. v. Anthem Ins. Companies*, 61 F. Supp. 2d 840, 856 (S.D. Ind. 1999) (finding parties have not agreed upon a narrower standard of review because provision granting administrator discretion did not provide sufficient discretion to determine whether a claimant is eligible for benefits); *Freeman v. Sickness & Acc. Disability Plan of AT & T Techs., Inc.*, 823 F. Supp. 404, 410 (S.D. Miss. 1993) (finding that parties had agreed upon a narrower standard of review because the "language of the Plan was sufficient to bestow discretionary authority").

Second, Defendants argue PNC's delegation to Liberty is partially set forth in the SPD in two places. Defendants first note that the Plan specified that a claimant "may be required to submit whatever proof the Plan Administrator may require (either directly to the Plan Administrator or to any person delegated by it)." Defs.' Motion at 11–12; AR 2682. While similar clauses can generally confer discretion to the party who may require such proof,[18] the party requesting proof here is the Plan Administrator, which is PNC—not Liberty. Accordingly, this clause does not grant Liberty any discretion.

Next, Defendants note that the SPD specifies that the "claims administrator determines whether [a claimant's] disability meets" the definitions of disabled under the plan. Defs.' Reply at 3 (citing AR 2668). As noted above, the SPD defines the "claims administrator" as Liberty. AR 2681. However, this clause also fails to invoke an abuse of discretion review for two reasons.

First, this clause limits Liberty's review to only one component for eligibility: disability. The SPD imposes several other requirements in order to determine eligibility, over which the SPD does not confer Liberty any role—much less discretion. *See, e.g.*, AR 2676 (listing exclusions if a claim arose from certain actions or if certain conditions apply). This clause falls short of conferring Liberty with authority "to determine eligibility for benefits or to construe the terms of the plan," *Firestone*, 489 U.S. at 115; *see, e.g.*, *Reinking v. Philadelphia Am. Life Ins. Co.*, 910 F.2d 1210, 1214 (4th Cir. 1990) *overruled in part on other grounds by Quesinberry v. Life Insurance Co. of North America*, 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc) (rejecting abuse of discretion standard of review because policy did not grant PALICO discretionary authority to find the facts necessary to make eligibility determinations); *Neurological Res., P.C.*

---

[18] *See, e.g.*, *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1233 (11th Cir. 2006) (finding that requirement to submit "satisfactory proof" conferred discretion to plan administrator).

*v. Anthem Ins. Companies*, 61 F. Supp. 2d 840, 856 (S.D. Ind. 1999) (rejecting arguments seeking an abuse of discretion review where the Plan "simply does not give the administrator discretion to determine whether a claimant is eligible for benefits."). Second, the language is not "express" and "unambiguous" as is required. *Kirwan*, 10 F.3d at 789. It is unclear whether Liberty has the full discretion PNC reserved for itself; in particular it is unclear whether Liberty's determinations are final, or whether Liberty's authority extends to making such determinations during an administrative appeal.

Third, Defendant argues that the Administrative Services Agreement, AR 2722–2742 vests Liberty with the requisite discretion. Plaintiff argues that the ASA is neither a plan document nor incorporated by reference into the SPD, nor executed pursuant to a procedure in the SPD, and therefore cannot confer Liberty the necessary discretion. *See* Pl.'s Motion at 13–14; Pl.'s Reply at 5–8. Defendants do not argue that the ASA is a plan document,[19] or that the SPD incorporates the ASA, but argue that there is no such "high bar" for delegation of discretionary authority. *See* Defs.' Opp at 4–6.

The Eleventh Circuit has not yet addressed the exact issue here, which is whether delegation of authority to a third party through a contract, which is not referenced in the Plan document, can constitute a grant of discretion such that judicial review of the third party's

---

[19] Nor could they. The ASA does not satisfy the requirements for a plan document summarized above. *See Schena*, 2006 WL 3333550 at *3; *see also Alday v. Container Corp. of Am.*, 906 F.2d 660, 665 (11th Cir. 1990) (finding "booklet does not fulfill the requirements for plan descriptions and summary plan descriptions" and thus could not be considered to determine parties' intent or to alter terms under the plan documents).

ERISA determination is reviewed only for abuse of discretion.[20] The Court agrees with the majority of courts to consider the issue, which have found that it cannot. *See, e.g.*, *Frichter v. Health Care Service Corp.*, 301 F.3d 811, 817 (7th Cir. 2002) (rejecting argument that ASA granted Health Care Service Cop discretion and noting that the ASA is not a "plan document"); *Crider v. Highmark Life Ins. Co.*, 458 F. Supp. 2d 487, 518 (W.D. Mich. 2006) (holding that a delegation found in a separate service agreement, which is not referred to in the Plan documents, is not valid under 29 U.S.C. § 1105(c)(1)); *see also Cosey v. Prudential Ins. Co. of Am.*, 735 F.3d 161, 170 n.8 (4th Cir. 2013) (declining to consider an ASA for state-law reasons, but noting that "in the ERISA context, the Supreme Court's decision in *Amara* has cast serious doubt on whether non-plan documents can be used to interpret a plan's language." (citing *CIGNA Corp. v. Amara*, 563 U.S. 421 (2011))); *accord Schena*, 244 F. App'x at 284 (referencing a "rigorously enforced rule" in which courts may "not look outside formal plan documents" to determine the terms of a plan).

Moreover, even if the ASA were a plan document, the ASA does not confer the type of discretion required for this Court to accord an abuse of discretion review. The Eleventh circuit has held that reservations of "full and exclusive authority to determine all questions of coverage and eligibility" along with "full power to construe the [ambiguous] provision[s]" of the plan "reserve enough discretion to make the arbitrary and capricious standard applicable." *Cagle v. Bruner*, 112 F.3d 1510, 1517 (11th Cir. 1997); *see also Buce v. Allianze Ins. Co.*, 247 F.3d 1133,

---

[20] The Eleventh Circuit has found that a contract can delegate duties for the purposes of determining liability in a breach of fiduciary duty action. *See Willett v. Blue Cross & Blue Shield of Alabama*, 953 F.2d 1335, 1340 (11th Cir. 1992). However, in determining whether to apply the abuse of discretion standard, the Eleventh Circuit has defined the task in terms of "tasked with "examining the *plan documents* to determine whether they grant the administrator discretion . . . ." *Tippitt*, 457 F.3d at 1232.

1138–39 (11th Cir. 2001) (upholding the district court's application of heightened arbitrary and capricious review where the insurance policy provided that the insurance company had the exclusive right to interpret the provisions of the plan). However, the ASA falls short of this conferral of discretion. For example, Annex B of the ASA provides that "[i]n the event that the Sponsor [PNC] determines that Liberty has misinterpreted the Plan and so informs Liberty in writing, all claims reported after delivery of such writing will be processed and paid *in accordance with the Sponsor's interpretation* as set forth in such writing." AR 2734. Annex B further provides that "[a]ll doubtful claims will be referred to the Sponsor f*or its determination of liability*." *Id.* Finally, Annex B indicates that Liberty will make determinations on the disposition of certain ERISA appeals, but in other cases PNC will be "responsible" for making those determinations. *See* AR 2735.

In other words, Liberty does not have the "full and exclusive authority to determine all questions of coverage and eligibility" or the "full power" to construe ambiguous provisions, *Cagle*, 112 F.3d at 1517. "A plan can give an administrator discretion in some areas but not in others." *Anthem Ins. Companies*, 61 F. Supp. 2d at 856. The ASA simply does not give the administrator full discretion to "determine whether a claimant is eligible for benefits." *Id.*

For both reasons, the ASA does not properly vest Liberty with sufficient discretionary authority such that an abuse of discretion review applies to its decisions. Accordingly, the Court concludes that Liberty was not vested with discretionary authority, and therefore its decision is properly reviewed under the de novo standard. *See Firestone*, 489 U.S. at 115. Because the Court has already found that Liberty's decision to terminate her benefits was de novo wrong, it must "end the inquiry" and reverse Liberty's decision to terminate benefits. *See Capone*, 592 F.3d at 1195. Plaintiff's request for a summary judgment hearing is accordingly denied.

## IV.  CONCLUSION

For the reasons provided, it is ORDERED and ADJUDGED that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 27) is GRANTED IN PART AND DENIED IN PART.

2. Defendants are instructed to provide past-due benefits from the date benefits were terminated, plus interest at the statutory rate. *See* 28 U.S.C. § 1961.

3. Defendants' Motion for Summary Judgment (ECF No. 30) is DENIED.

4. The Clerk is directed to CLOSE this case. All pending motions, if any, are DENIED MOOT.

5. The Court retains jurisdiction to resolve any dispute over the amount of benefits owed and any motion for fees and costs.

**DONE and ORDERED** at Miami, Florida, this 2nd day of October, 2017.

Kevin Michael Moore

Digitally signed by Kevin Michael Moore
DN: o=Administrative Office of the US Courts,
email=k_michael_moore@flsd.uscourts.gov, cn=Kevin Michael Moore
Date: 2017.10.02 17:30:54 -04'00'

K. MICHAEL MOORE
CHIEF UNITED STATES DISTRICT JUDGE

cc: All counsel of record